830 F.2d 1044
 Naomi Ruth WEST, et al., Plaintiffs-Appellants,
v.
FEDERAL AVIATION ADMINISTRATION; United States of America,
Defendants- Appellees.
Dulcy STEINLAUF, as Special administratrix of the Estate of
James Steinlauf; Dulcy Steinlauf, individually
and Malcolm Steinlauf, individually,
Plaintiffs- Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 Nos. 85-2601, 85-2612.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 17, 1987.
Decided Oct. 21, 1987.
 
 Marshall L. Foreman, San Diego, Cal., and Richard B. Goethals, Jr., San Francisco, Cal., for plaintiffs-appellants.
 Barbara B. O'Malley, Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California (Sacramento).
 Before CHOY, ALARCON and O'SCANNLAIN, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 * Naomi Ruth West, her three children and Dulcy and Malcolm Steinlauf (hereinafter appellants) appeal the district court's order that it lacked subject matter jurisdiction to determine whether the acts of certain Federal Aviation Administration (FAA) employees were responsible for the crash of a Sierra Pacific airplane at Bishop Airport in California. Plaintiffs claim that the filing of this action was proper under the Federal Tort Claims Act (FTCA) and that the challenged actions of the FAA do not fall within the discretionary function exception to liability under the FTCA. We disagree and affirm.
 
 A.
 
 2
 Bishop Airport lies in a deep funnel-shaped valley bounded on the west by the Sierra Nevada Mountains and on the east by the White Mountains. The terrain to the east of the airport begins to rise rapidly at about three and a half miles and to the west of the airport at about eight miles.
 
 
 3
 An FAA Procedures Specialist designed and approved a special instrument approach and departure procedure for Bishop Airport. The procedure was checked according to FAA regulations during a series of daytime flights.
 
 
 4
 The approved procedure required that the airplane climb after takeoff to 8,000 feet within two miles of the airport. This is done by flying a two mile arc circling around the airport while climbing. Because of the height and the proximity of the mountains to the airport, a requirement that a pilot climb 8,000 feet under instrument conditions would not provide enough margin for safety to meet FAA requirements. Consequently, the departure procedure the FAA specialist designed required pilots to maintain a two mile distance from the airport visually during the climb.
 
 
 5
 Pilots departing from Bishop Airport were required to follow the FAA departure procedure or an alternative approved by the Federal Air Route Traffic Control Center. Sierra Pacific's FAA approved Operations Specifications and Operations Manual required their pilots to use the FAA procedure.
 
 B.
 
 6
 The accident occurred when a Sierra Pacific charter flight struck the slope of the White Mountains while attempting to depart from the Bishop Airport. The district court found that it was more probable than not that the cause of the accident was a lack of sufficient ground lighting, resulting in a visual phenomenon whereby pilots flying on a very black night could be misled into believing they were closer to the airport than they actually were.
 
 
 7
 Although FAA employees were aware of the visual phenomenon, no special steps were taken to determine whether there was a problem with the lighting at Bishop Airport or reliance on the two mile distance requirement on a dark night. The FAA did not make a night flight check of the visual climb aspect of the departure procedure.
 
 C.
 
 8
 At the first trial in this matter, the district court found that the proximate cause of the accident was that FAA employees, acting in the scope and course of their employment, negligently failed to conduct night test flights of the visual climb reprocedure.[1] The United States appealed. We remanded for reevaluation in light of the Supreme Court's decision of United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). On remand, the district court held that it was without subject matter jurisdiction to consider these claims because the conduct of the FAA employees fell within the discretionary function exception to the FTCA. Accordingly, the district court vacated the prior judgment and dismissed the action.
 
 II
 
 9
 We review de novo a determination whether the discretionary function exception to the FTCA applies. Baker v. United States, 817 F.2d 560, 562 (9th Cir.1987).
 
 
 10
 "[T]he United States can be sued only to the extent that it has waived its [sovereign] immunity...." United States v. Orleans, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); Baker, 817 F.2d at 562. The burden of showing an unequivocal waiver of immunity lies with the party bringing a cause of action against the federal government. Baker, 817 F.2d at 562. The FTCA provides for a limited waiver of the federal government's immunity. 28 U.S.C. Sec. 1346(b) (1982).[2]
 
 
 11
 Several classes of tort claims are excepted from the FTCA's waiver of immunity. Baker, 817 F.2d at 562. 28 U.S.C. Sec. 2680(a) (1982) states in part that section 1346(b) does not apply to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."
 
 
 12
 The Supreme Court's decision in Varig is its most recent discussion of the discretionary function exception. In Varig, the Supreme Court held that the United States was not liable for any negligence on the part of the FAA in certifying the aircraft in question for commercial aviation use. 467 U.S. at 819-20, 104 S.Ct. at 2767-68. The Court held that the procedures chosen for certification were left to the discretion of the FAA and therefore were exempt from the FTCA under the discretionary function exception. Id.
 
 
 13
 In reaching its decision, the Court found two factors useful "in determining when the acts of a Government employee are protected from liability by Sec. 2680(a)." Id. at 813, 104 S.Ct. at 2764.
 
 
 14
 First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function applies in a given case.... [T]he basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee--whatever his or her rank--are of the nature and quality that Congress intended to shield from tort liability.
 
 
 15
 Id.
 
 
 16
 The second factor was based on a reading of the legislative history of section 2680(a). Baker, 817 F.2d at 564. The Supreme Court stated that the discretionary function exception included at the very least "the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." Varig, 467 U.S. at 813-14, 104 S.Ct. at 2764 (footnote omitted). The Court found that Congress intended to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 814, 104 S.Ct. at 2765.
 
 
 17
 "Our post-Varig decisions have hewed closely to the ... Varig view[ ] of the discretionary function exception." Baker, 817 F.2d at 564 (collecting cases). In Begay v. United States, 768 F.2d 1059, 1064 (9th Cir.1985), we held that any time judicial review would encroach upon an agency's balancing of policy issues, the exception would apply. We also stated that Varig compels us to analyze the nature of the conduct in each case to determine if the discretionary function exception is applicable. Id.
 
 III
 
 18
 Congress has given the FAA the power to establish necessary procedures and regulations for the safety of flight in air commerce. 49 U.S.C. Sec. 1421(a)(1), (6) (1982).[3] The FAA also has the power to delegate that discretion to its agents and employees. 49 U.S.C. Sec. 1343(d) (1982).[4] The FAA exercised that discretion in determining that a departure procedure should be designed for Bishop Airport.
 
 
 19
 FAA employees were delegated the power and duty to determine whether nighttime proving flights were required before approving the departure procedure designed for Bishop Airport. The district court found that FAA employees, when making these decisions, "were authorized only to consider the safety of the procedure and not social, political or economic considerations other than safety." (Emphasis added).
 
 
 20
 Appellants, while admitting that discretion was involved in the decisions the FAA made, argue that the district court considered safety alone and did not evaluate the social, political or economic policy considerations that Varig requires. Appellants argue that safety is not a social, political or economic consideration.
 
 
 21
 * FAA employees consider safety in exercising their judgment whether to establish departure procedures for airports. They also consider safety in exercising their judgment whether night proving flights are needed. Determination of safety requirements involves a balancing of social, economic or political policies. In any safety decision, there are limits to the resources available to test and inspect the procedure and those who will be using it. Varig, 467 U.S. at 820, 104 S.Ct. at 2767. In Varig the Court held that regulatory activity within the discretionary function exception includes an agency's determination of "the extent to which it will supervise the safety procedures of private individuals...." Id. at 819-20, 104 S.Ct. at 2767 (emphasis added). See also Cunningham v. United States, 786 F.2d 1445, 1447 (9th Cir.1986) (when Congress leaves the establishment and enforcement of safety standards to an agency, it intends an exercise of that discretion to fall within the discretionary function exception). The decision the FAA made here as to what is necessary for establishing a safe departure procedure includes at the very least the same social and economic considerations in Varig. Practical considerations such as staffing and funding are policy decisions excepted under the discretionary function exception, Varig, 467 U.S. at 820, 104 S.Ct. at 2767. The district court properly took such considerations into account.
 
 B
 
 22
 Appellants contend that the decision of FAA employees whether to perform night test flights of the visual climb departure procedure was not an exercise of discretion within the discretionary function limitation. The district court found that the employees responsible for establishing the departure procedure were to use their own best judgment in deciding what tests were required before the specific procedure was put into effect. There were no FAA regulations in effect at the time the procedure was developed requiring flights to test the visual climbs aspects. In fact, there were very few guidelines given to help in establishing any part of the departure procedures. See United States Standard Flight Inspection Manual, p. 152 Secs. 421-22 ("field personnel will continue to use their good judgment in establishment of procedures").
 
 
 23
 As in Varig, the FAA has used its discretionary power to delegate the judgment decisions to the employees in helping to establish guideline procedures for flight in air commerce. The FAA employees used that judgment in deciding that it was not feasible or necessary to make any more tests on the procedure because the costs of doing the type of tests the appellants suggested would greatly outweigh any added safety benefits.
 
 
 24
 Another factor the FAA employees were entitled to consider in designing the departure procedure is that the pilot has the primary responsibility to determine whether conditions are safe enough to use the prescribed procedures. See 14 C.F.R. Secs. 91.3, 91.5 (1987)[5] (pilot of an aircraft is responsible for the operation of that aircraft and must familiarize himself with all available information concerning a flight before departure). The Supreme Court in Varig found that it was appropriate for the FAA to take into consideration the manufacturer's primary responsibility for safety when carrying out its inspection and certification procedures. 467 U.S. at 816, 104 S.Ct. at 2766. Here, the pilot had the primary responsibility to make sure that the aircraft was flown safely, 14 C.F.R. Sec. 91.3, and that conditions existing at the time of departure would allow for a safe flight, 14 C.F.R. Sec. 91.5. The FAA only established a procedure for departing from Bishop Airport, it did not warrant that such procedure would be safe under all conditions.
 
 
 25
 In Colorado Flying Academy, Inc. v. United States, 724 F.2d 871, 876-77 (10th Cir.1984), cert. denied, --- U.S. ----, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986), the Tenth Circuit held that the administrative decision involved in creating terminal control areas (TCA) where visual flight procedures could not be used fell within the discretionary function limitation of the FTCA. Although the FAA established general guidelines for the design of the TCA, the decision was left to the discretion of the employee designing the particular configuration. Id. at 874. There were no mandatory standards controlling the design. Id. The latitude in the guidelines emphasized the discretion available to the designer and called for balancing competing interests and policies and tailoring the TCA to meet local conditions. Id. at 876-77.
 
 
 26
 The analysis the Tenth Circuit employed in Colorado Flying Academy is applicable to the facts presented in the instant matter. The FAA employees who were responsible for the design of the departure procedures from Bishop Airport were given wide discretion. They were required to use their best judgment in deciding what tests were necessary to meet reasonable safety requirements. This required a balancing of social and economic interests and a tailoring of safety requirements to local conditions.
 
 IV
 
 27
 We affirm the district court's dismissal for lack of subject matter jurisdiction. The design of the departure procedure was an exercise of discretion under 49 U.S.C. Sec. 1421(a)(6). The exercise of a discretionary function is an exception to the FTCA.[6]
 
 
 28
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 In their initial complaint, appellants also contended that the FAA employees negligently certified Sierra Pacific to conduct flights from Bishop Airport at night. At oral argument, the attorneys for the appellants conceded that the FAA employees' conduct involved in certifying Sierra Pacific was within the discretionary function exception and stated that they were no longer claiming liability for those actions
 
 
 [2]
 Section 1346(b) renders the United States liable for damages
 for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
 
 
 [3]
 This section became effective in 1958
 
 
 [4]
 This section was repealed effective 1983. It was in effect when the conduct at issue was performed. The authority to delegate duties is currently found at 49 U.S.C. Sec. 322(b) (1982)
 
 
 [5]
 These sections became effective in 1963
 
 
 [6]
 Whether the decisions made in this case were correct ones is not at issue. Once it is established that the decision is within the discretionary function exception, the acts of the federal employee are immune from liability even if they are negligent or there was abuse involved. 28 U.S.C. Sec. 2680(a). See also Natural Gas Pipeline Co. of America v. United States, 742 F.2d 502, 504 (9th Cir.1984) (the FAA's negligent certification was immune from tort liability because certification process involves discretion)