**Daniel STARRETT; Frances Starrett, Plaintiff-Appellants,**

v.

**UNITED STATES of America; Department of the Navy, Defendants-Appellees.**

No. 87–4169.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1988.

Decided May 23, 1988.

David A. Bricklin, Bricklin & Gendler, Seattle, Wash., for plaintiffs-appellants.

David S. Fishback, Sr. Trial Counsel, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before BEEZER, HALL and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Daniel and Frances Starrett ("Starretts") appeal summary judgment dismissing their action filed under the Federal Tort Claims Act (FTCA) for lack of subject matter jurisdiction. The Starretts claim the district court erred in ruling the "discretionary function" exception to the FTCA, 28 U.S.C. § 2680(a), barred their claim that operations at the Navy Trident Submarine Base at Bangor, Washington, contaminated their well water. We reverse.

## BACKGROUND

The Starretts own and reside on property adjacent to the United States Naval Submarine Base at Bangor, Washington. They allege that their domestic water well was contaminated by chemicals from the Navy Base produced during the demilitarization ("demilling") of missiles in an area of the base known as "Site F". These chemicals leached into the ground water and subsequently entered the Starretts' well.

Demilling is a process to remove explosives from missiles. The actual process used until 1972 involved drilling holes in the rocket heads, passing steam through the heads to liquify the explosives, and separating the liquified explosive from the water. The waste water was strained through cheesecloth, then piped into a sump and finally pumped into a trench. The district court found that all contaminants were not removed from the water using this process. Demilling of missiles at Bangor began before 1965. This trench process was discontinued at Bangor by 1971.

The Starretts filed their action on July 31, 1986, against the United States Navy,

under the FTCA. 28 U.S.C. § 1346(b). The government moved for dismissal or, alternatively, for summary judgment on April 24, 1987, on the ground that the district court lacked subject matter jurisdiction under the FTCA because of the discretionary function exception of 28 U.S.C. § 2680(a). On July 15, 1987, the district court granted the government's motion to dismiss and entered judgment. The Starretts timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

DISCUSSION

■ We review *de novo* a district court's determination that it lacks subject matter jurisdiction under the discretionary function exception. *Baker v. United States*, 817 F.2d 560, 562 (9th Cir.1987); *Chamberlin v. Isen*, 779 F.2d 522, 523 (9th Cir.1985).

The Starretts argue that the discretionary function exception does not apply to this action because the government and its employees do not have discretion to violate mandatory federal regulations.[1] The Starretts must, however, show that the government violated a "specific mandatory" requirement in order for the discretionary function exception to be overcome. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820, 104 S.Ct. 2755, 2767, 81 L.Ed.2d 660 (1984) (holding that FAA employees executing "spot check" program in "accordance with agency directions" are protected by discretionary function exception); *Dalehite v. United States*, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953) (discretionary function exception applies only where acts are "in accordance with official directions"); *Baker*, 817 F.2d at 564. The government argued, and the district court agreed, that no such specific and mandatory requirement governed waste

disposal for the demilling process at Bangor. The Starretts contend the provisions of four regulations constitute such a specific and mandatory requirement that would overcome the discretionary function exception. These regulations include: Exec. Order No. 10014, 3 C.F.R. 836 (1948); the Navy's 1945 document, Notes on Waste Disposal (prepared by Navy Sanitation Section); the Navy's 1957 Manual on Naval Preventive Medicine (written by Navy Bureau of Medicine and Surgery); and Exec. Order No. 11258, 3 C.F.R. 357 (1965). Because we decide that Executive Order 11258 constitutes a specific and mandatory direction to the Navy to provide secondary treatment for wastes and to prevent their being discharged if they constitute a health hazard, we need not consider the other regulations.[2]

Executive Order 11258 was signed by President Johnson on November 17, 1965. It superseded all previous statements of policy concerning pollution from government facilities, *id.* § 9, and provided that the "Executive Branch ... shall provide leadership in the nationwide effort to improve water quality through prevention, control, and abatement of water pollution from Federal Government activities in the United States." *Id.* § 1.

Were this all the Executive Order provided, it would certainly not qualify as a specific and mandatory requirement, limiting government discretion. But the Order went on to require that all "new facilities," those constructed after the effective date of the Order, *id.* § 2, comply with the general standards prescribed in section 4 of the order, including provision for "secondary treatment, or its equivalent, for all wastes except cooling water and fish hatchery effluents," and an outright prohibition

1. The discretionary function exception provides that:

The provisions of [the FTCA] shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
28 U.S.C. § 2680(a).

2. Likewise, we do not consider the Starrett's other argument that the discretionary function exception cannot apply because no social, economic, or political policy decision was at stake in the Navy's planning for a waste disposal system at site F.

of discharge of wastes into waters if they contain "any substances in concentrations which are hazardous to health." Exec. Order No. 11258, §§ 4(a), 4(d), 3 C.F.R. 359–60 (1965). Administrators of "existing facilities," those in operation before the Executive Order was signed, *id.* § 3(a), were required to submit plans to bring their activities into compliance with the same standards. *Id.* Counsel for the government conceded at oral argument that the distinction between "new" and "existing" facilities does not matter. The Bangor Naval Submarine Base and Site F were governed by Executive Order 11258's requirements of secondary treatment and prohibition of discharges.

The government maintains that the term "secondary treatment" is insufficiently specific. We disagree. Executive Order 11258 was enacted as an on-going effort to implement the Clean Water Act, 33 U.S.C. §§ 1251–1376, and that legislation clearly provides for, and defines, secondary treatment. 33 U.S.C. § 1311. There is some question whether the trench method of waste disposal for the demilling process included secondary treatment. See 33 U.S. C. § 1314(d)(4) (describing "ditches" as the equivalent of secondary treatment, provided that discharge emission is reduced to levels specified by regulation); 40 C.F.R. § 133.105 (1987) (detailing those emission standards). Whether the trench system satisfied the requirement of "secondary treatment" is a question of fact which depends on evidence of the actual emission of contaminants into the groundwater. The government also contends that it is uncertain whether the runoff from the demilling process constituted "wastes." This also was a disputed issue, one inappropriate for disposition by summary judgment. Fed.R.Civ.P. 56(c).

Based on the record before us, we conclude that Executive Order 11258 is a specific and mandatory requirement for the Navy's operations at Bangor, and that the discretionary function exception cannot apply in this case. Whether the provisions of the Order were actually violated by the Navy in its demilling operation, is an issue of fact to be decided at trial.

CONCLUSION

The summary judgment of the district court is, therefore, REVERSED, and the case REMANDED for further proceedings consistent with this decision.

REVERSED and REMANDED.