**Jewel CATO; Joyce Cato; Howard Cato; Edward Cato, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Leerma PATTERSON; Charles Patterson; Bobbie Trice Johnson, et al., Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Nos. 94–17102, 94–17104.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 16, 1995.

Decided Dec. 4, 1995.

Eva Jefferson Paterson and William McNeill, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, San Francisco, California, for plaintiffs-appellants.

Mary Beth Uitti, Assistant United States Attorney, San Francisco, California, for defendant-appellee.

Before: SCHROEDER, FLETCHER, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Two groups of plaintiffs, Jewel Cato, Joyce Cato, Howard Cato and Edward Cato; and Leerma Patterson, Charles Patterson, and Bobbie Trice Johnson (collectively "Cato"), filed nearly identical complaints *in forma pauperis* against the United States for damages due to the enslavement of African Americans and subsequent discrimination against them, for an acknowledgment of discrimination, and for an apology.[1] The district court in both cases dismissed the complaints prior to service pursuant to 28 U.S.C. § 1915(d).[2]

We have carefully considered Cato's pleading and the arguments of appellate counsel. On our own, we have tried to conceive of possibilities for stating a cognizable claim. As Judge Armstrong stated so well:

> Discrimination and bigotry of any type is intolerable, and the enslavement of Africans by this Country is inexcusable. This Court, however, is unable to identify any legally cognizable basis upon which plaintiff's claims may proceed against the United States. While plaintiff may be justified in seeking redress for past and present injustices, it is not within the jurisdiction of this Court to grant the requested relief. The legislature, rather than the judiciary, is the appropriate forum for plaintiff's grievances.

To us, as to the district court, it is clear that this complaint cannot be cured by amendment. Cato's theories of liability either fall outside the limited waiver of sovereign immunity by the United States, or otherwise are not within the jurisdiction of the federal

1. Since Cato was the only named individual to sign the complaint and the *in forma pauperis* declaration in No. 94–17102, and Johnson the only such plaintiff in her action (No. 94–17104), the district court dismissed the other plaintiffs as a non-attorney may appear only in her own behalf. *C.E. Pope Equity Trust v. United States,* 818 F.2d 696, 697 (9th Cir.1987). Both Cato and Johnson are represented by counsel on appeal.

2. The court's order dismisses the complaint with prejudice, but provides that it "does not foreclose plaintiff from refiling her action as a paid complaint." Both plaintiffs had previously filed *in forma pauperis* complaints with the same allegations, which had previously been dismissed pursuant to § 1915(d) by different judges. The district court held that this provided an independent ground for dismissal of Cato's complaint. We agree. There is no abuse of discretion where a district court dismisses under § 1915(d) a complaint "that merely repeats pending or previously litigated claims." *Bailey v. Johnson,* 846 F.2d 1019, 1021 (5th Cir.1988); *see also Denton v. Hernandez,* 504 U.S. 25, 30, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992) (recognizing Congress's concern that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits") (quotation omitted).

courts. Because the district court did not abuse its discretion, we affirm.

## I

Cato's complaint seeks compensation of $100,000,000 for forced, ancestral indoctrination into a foreign society; kidnapping of ancestors from Africa; forced labor; breakup of families; removal of traditional values; deprivations of freedom; and imposition of oppression, intimidation, miseducation and lack of information about various aspects of their indigenous character. She also requests that the court order an acknowledgment of the injustice of slavery in the United States and in the 13 American colonies between 1619 and 1865, as well as of the existence of discrimination against freed slaves and their descendants from the end of the Civil War to the present. In addition, she seeks an apology from the United States.

The complaint itself does not refer to any basis upon which the United States might have consented to suit. However, because Cato was proceeding *pro se*, the district court construed her papers liberally and surveyed the most likely authorities for waiver, but found them unavailing. Specifically, the court noted that the waiver of sovereign immunity in tort actions against the government in the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2674, is limited to claims accruing on and after January 1, 1945, *id.* at § 1346(b); and that the Civil Rights Act, 42 U.S.C. § 1981(a), applies to individual federal officials but not to the United States. The court also observed that while Cato's action appears to be patterned after the reparations authorized by Congress for individuals of Japanese ancestry who were forced into internment camps during World War II, those reparations were not awarded as damages in court but rather were enacted into law in the Civil Liberties Act of 1988, codified at 50 App. U.S.C. § 1989a(a). The court concluded that Cato's claims are barred by sovereign immunity, and that the appropriate forum for policy questions of the sort raised by her complaint is Congress, rather than the courts. Cato timely appealed.

## II

First, Cato contends that dismissal of her action was premature in that she was given no opportunity to be heard on the adequacy of her complaint, or to amend. She also argues that the complaint should not have been dismissed merely because the court has doubts that the plaintiff will prevail.

A district court may, in its discretion, dismiss an *in forma pauperis* complaint "if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d); *Denton,* 504 U.S. at 33, 112 S.Ct. at 1733–34. A complaint is frivolous within the meaning of § 1915(d) if it lacks an arguable basis either in law or in fact. *Id.* at 31, 112 S.Ct. at 1733 (quoting *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989)). A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment. *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987).

We do not read the district court's order as dismissing Cato's complaint on account of doubts about her ability to succeed. Rather, the court determined that Cato had not met her burden of showing a waiver of sovereign immunity, and that her claims were not legally cognizable because they raise "a 'policy question' which the judiciary 'has neither the authority nor wisdom to address.'" (Order Dismissing Complaint, quoting *Fullilove v. Klutznick,* 448 U.S. 448, 537, 100 S.Ct. 2758, 2805, 65 L.Ed.2d 902 (1980) (Stevens, J., dissenting)). For these reasons, the court concluded that while Cato may be justified in seeking redress for past and present injustices from the Congress, the court lacked jurisdiction to grant the requested relief.

As Cato's complaint neither identifies any constitutional or statutory right that was violated, nor asserts any basis for federal subject matter jurisdiction or waiver of sovereign immunity, it was properly dismissed. Section 1915(d) authorizes a court to review a complaint that has been filed *in forma pauperis,* without paying fees and costs, on its own initiative and to decide whether the ac-

tion has an arguable basis in law before permitting it to proceed.

The critical question, however, for the district court as for us, is whether leave to amend should have been given. Cato was not represented by counsel in the district court, but is here; we therefore have the benefit of counsel's suggestions for curative amendments, as well as those hypothesized by the district court. Accordingly, we turn to Cato's disagreements with the court's ruling and to the possibilities for amendment that she suggests on appeal.

### III

Cato first contends that we should not affirm the district court's dismissal on statute of limitations grounds. Strictly speaking, we don't. The dispositive question is whether her theories of liability are barred by sovereign immunity, or otherwise fall outside the district court's jurisdiction.[3]

### A

■ It is axiomatic that the United States can be sued only to the extent that it has waived its sovereign immunity. *Baker v. United States,* 817 F.2d 560, 562 (9th Cir. 1987). The terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit. *F.D.I.C. v. Meyer,* —— U.S. ——, ——, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). It is likewise well settled that a waiver of the government's sovereign immunity " 'cannot be implied but must be unequivocally ex-

pressed.' " *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1983) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)). The burden is on the plaintiff to make such a showing. *Baker,* 817 F.2d at 562.

■ The district court looked to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2674, to resolve this threshold question because it is the most likely candidate for waiver.[4] As the district court properly concluded, however, Cato did not meet this burden.[5]

Section 1346(b) of the FTCA gives federal courts jurisdiction only over "civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945." 28 U.S.C. § 1346(b). Moreover, a tort claim against the United States "shall be forever barred" unless it is presented within two years after the claim accrues. 28 U.S.C. § 2401(b). By its own terms, therefore, claims arising out of the fact of slavery, kidnapping, and other offenses to Cato's ancestors that occurred prior to 1945 or were not pursued within two years of their accrual, fall outside the FTCA's limited waiver of sovereign immunity.

### B

We take Cato's argument that her action is not barred by the statute of limitations in this context to mean that no time constraint (whether as a condition of the government's waiver of sovereign immunity or otherwise[6]),

---

**3.** As these issues do not break neatly into categories without overlap, we intermingle them with our discussion of Cato's arguments on appeal.

**4.** Cato suggests no other statutory sources of waiver on appeal.

**5.** We also hold that she cannot do so, because it is absolutely clear that the FTCA provides no basis for waiver on any of the theories for monetary recovery that Cato offers on appeal. *See infra* at 1109–10 (alleged failures of the Congress to discharge duties are within the discretionary function which the FTCA excepts from the limited waiver of sovereign immunity); and at 1110–11 (no waiver of sovereign immunity for claim against the United States under the Thirteenth Amendment). However, as we shall discuss in Part VI, *infra* at 1111, the United States has

waived sovereign immunity in claims for nonmonetary relief in the Administrative Procedures Act (APA), 5 U.S.C. § 702, but Cato's theories fail on other grounds.

**6.** The government relies on the general statute of limitations in claims against the United States, which is six years, 28 U.S.C. § 2401(a), to argue that the court has no jurisdiction to consider claims for historical events, such as the wrongs upon which Cato sues, that occurred during times prior to the Civil War of 1861–1865. *See, e.g., Japanese War Notes Claimants Association of the Philippines, Inc. v. United States,* 373 F.2d 356, 358, 178 Ct.Cl. 630, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967); *Hohri v. United States,* 586 F.Supp. 769 (D.D.C.1984), *aff'd,* 847 F.2d 779 (D.C.Cir.1988), *cert. denied,*

should apply to her claims. She offers two reasons: First, that courts should not sustain dismissal of actions on statute of limitations grounds where the wrong sued upon is based on a constitutional or statutory prohibition. For this proposition she analogizes the wrongs about which she complains to recent cases arising under the Indian Trade and Intercourse Act, 25 U.S.C. § 177, which prohibited the sale of land by Indians unless it was by treaty made under the authority of the United States, where the federal courts have addressed Indian land claims that are hundreds of years old. *See, e.g., Oneida Indian Nation of New York v. State of New York,* 691 F.2d 1070, 1083–84 (2d Cir.1982). Cato locates the relevant prohibition in her case in the Thirteenth Amendment.

■ To the extent her argument is that we should for the same reason ignore time limitations on the government's waiver of sovereign immunity, we can't agree. Analogy to Indian land claim cases is not persuasive, for the courts' willingness to hear the kind of claim exemplified by *Oneida* does not turn on whether the claims were based on a prohibition. Rather, *Oneida,* for example, turned on the well-established rule that a suit by the United States as trustee on behalf of an Indian Tribe is not subject to state delay-based defenses, and the anomalous result that would otherwise obtain if the trustee were allowed to sue under more favorable conditions than those afforded the tribes themselves. *Id.* at 1084. Further, the circumstances under which an action *by* the United States can be brought sheds no light on the circumstances under which an action *against* the United States can be brought. In any event, as the government points out, regardless of whether there are factual similarities between the treatment accorded Indian Tribes and African American slaves and their descendants (as Cato contends), there is nothing in the relationship between the United States and any other persons, including African American slaves and their descendants, that is legally comparable to the unique relationship between the United States and Indian Tribes. Courts have recognized fiduciary responsibilities running from the United States to Indian Tribes because of specific treaty obligations and a network of statutes that by their own terms impose specific duties on the government. *See, e.g., United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Mason,* 412 U.S. 391, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973); *Seminole Nation v. United States,* 316 U.S. 286, 62 S.Ct. 1049, 86 L.Ed. 1480 (1941). Similar strictures do not appear in the Thirteenth Amendment alone, or in combination with the other Civil War amendments and the various Civil Rights Acts which have been enacted in the meantime. We therefore see no basis in the Indian land cases, or the relationship between the federal government and Indian Tribes, for relieving a private plaintiff such as Cato of the need to show that her action against the United States meets all the conditions, including time constraints, of the consent by the United States to be sued.

## C

■ As a second ground for avoiding affirmance on the basis of the statute of limitations, Cato argues that she need not allege discrimination within any particular time period because discrimination is a continuing act. She submits that African Americans continue to face virtually unfettered police activity and intolerance by others; none has been elected President and only three to the Senate; and Congress has failed to pass legislation that would eliminate disparity in executions of African Americans for capital crimes. From this, she contends, the continuing violations doctrine applies because African Americans are still subjected to the badges and indicia of slavery.

We have, of course, recognized the doctrine, *see, e.g., Siseton–Wahpeton Sioux Tribe v. United States,* 895 F.2d 588 (9th Cir.1990); *Williams v. Owens–Illinois, Inc.,* 665 F.2d 918 (9th Cir.1982), and we agree with Cato that it is applicable to constitution-

488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988). While this may well have provided an alternative basis for dismissing the complaint, we believe the district court correctly grounded its

ruling on lack of subject matter jurisdiction. Therefore, we do not consider whether Cato's action is barred by the general six year statute of limitations.

al as well as statutory violations. However, it can't create jurisdiction, or help overcome jurisdictional hurdles, unless this plaintiff can sue the United States for the acts complained of. We therefore turn to the substantive bases upon which *Cato* suggests that her action is justiciable.

## IV

■ Cato argues that the action is justiciable because the Thirteenth Amendment created a national right for African Americans to be free of the badges and indicia of slavery, they continue to suffer from the lingering incidents of slavery, and there are theories of relief available under the FTCA for intentionally inflicted harm and violation of duty by the federal government. She first draws on the legislative history of the Thirteenth Amendment and the Civil Rights Act of 1866 to contend that the federal government had an obligation to end the vestiges of slavery, but has failed to keep the promise. As she puts it, "[t]his action is the means to seek the remedy which has been prescribed by Congress and the Court[7] and which is long overdue."

Then, in addition to disparities in employment, income, and education, Cato identifies two contemporary actions, or inactions, by Congress which she contends evince its failure to fulfill its duty under the Thirteenth Amendment: Congress's failure to pass the Racial Justice Act (introduced as HR 4017 in the House on March 11, 1994, to amend Title 28 of the United States Code to prevent racially discriminatory capital sentencing) and legislation introduced in the United States Senate that would repeal federal affirmative action programs (introduced February 22, 1995, as S. 497, called an "Act to End Unfair Preferential Treatment," to amend Part VI of Title 28). Finally, she suggests

that the FTCA imports both the prima facie tort doctrine, Restatement (Second) of Torts § 870, and Cal.Gov't Code § 815.6, under which the government might be liable for failing to act or to discharge a duty with which it has been charged.

■ These theories afford no basis for curing the complaint, for two main reasons. First, Cato proceeds on a generalized, class-based grievance; she neither alleges, nor suggests that she might claim, any conduct on the part of any specific official or as a result of any specific program that has run afoul of a constitutional or statutory right and caused her a discrete injury.[8] Without a concrete, personal injury that is not abstract and that is fairly traceable to the government conduct that she challenges as unconstitutional, Cato lacks standing. *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). As the Court explained in *Allen:*

> Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. The requirement of standing, however, has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

*Id.* at 751, 104 S.Ct. at 3324. No plaintiff has standing "to complain simply that their Government is violating the law." *Id.* at 755, 104 S.Ct. at 3326. Neither does Cato have standing to litigate claims based on the stigmatiz-

---

7. Cato's reference is to *Jones v. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), where the Court stated:

"By its own unaided force and effect," the Thirteenth Amendment "abolished slavery, and established universal freedom." [Civil Rights Cases.] Whether or not the Amendment *itself* did any more than that—a question not involved in this case—it is at least clear that the Enabling Clause of that Amendment empowered Congress to do much more. For that

clause clothed "Congress with power to pass *all laws necessary and proper for abolishing all badges and incidents of slavery in the United States." Id.* at 439, 88 S.Ct. at 2203 (emphasis in original).

8. We express no view with respect to any such possibility, which we regard as being outside the parameters both of the pleading that was dismissed and the court's ruling on it.

ing injury to all African Americans caused by racial discrimination. *Id.* In any case, she does not trace the presence of discrimination and its harm to the United States rather than to other persons or institutions. Accordingly, Cato lacks standing to bring a suit setting forth the claims she suggests.

 In addition, there is no cognizable avenue for litigating a complaint about the judgment calls of legislators in their legislative capacity. The FTCA does not apply to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Legislative conduct is discretionary for purposes of the exception. *See Baker,* 817 F.2d at 564. Further, the FTCA waives sovereign immunity only where the United States, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The relevant private person in Cato's scenario would be a Senator, or member of Congress, who is, however, protected by absolute immunity under Article I, § 6 of the Constitution. *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). As we explained in *Baker,* "Congress wished to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Baker,* 817 F.2d at 564 (citation omitted). Thus, at the end of the day no jurisdiction would lie, and no claim for relief would be stated, even were the complaint to be amended along the lines proposed and even if an administrative claim could be filed with some government agency as required by § 2675(a) of the FTCA.

## V

Cato submits that sovereign immunity does not bar her action because the United States can be sued directly under the Thirteenth Amendment, because it can be sued through its agents even where there is no express statutory provision, and because the United States waives its sovereign immunity whenever Congress has explicitly provided a private right of action in a statute or through legislative history. Cato argues that the first clause of the Thirteenth Amendment ends slavery and its vestiges, while the second allows Congress to enact appropriate legislation to fulfill the obligation set out in the first.[9] In her view, this gives rise to a right to sue the United States directly because otherwise, the Thirteenth Amendment's obligation is meaningless. Also, drawing upon *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), Cato argues that when an important constitutional right has been violated and there is no explicit Congressional declaration barring suit, an action for damages against the United States may lie. Finally, she infers in the adoption of the Thirteenth Amendment a promise by Congress to enforce these articles (which she claims that Congress has failed to fulfill), thereby waiving sovereign immunity. We cannot agree.

 Regardless of whether the text of the Thirteenth Amendment itself admits of the self-enforcing construction that Cato attaches to it, she cannot possibly assert a right to damages on account of it. In *F.D.I.C. v. Meyer,* the Supreme Court declined to extend the *Bivens* rationale beyond individual employees to actions against agencies of the United States. *Meyer,* —— U.S. at ——–——, 114 S.Ct. at 1004–06. *A fortiori,* no *Bivens*-type claim lies against the United States itself. *See Hohri v. United States,* 586 F.Supp. 769, 782 (D.D.C.1984) (sovereign immunity bars claim against the United States brought directly under, among other things, the Thirteenth Amendment), *aff'd,* 847 F.2d 779 (D.C.Cir.1988). Nor may

---

9. The Thirteenth Amendment provides:

 **Section 1.** Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

 **Section 2.** Congress shall have power to enforce this article by appropriate legislation.

Cato sue under the FTCA by alleging violation of the Thirteenth Amendment as the underlying tort. *Meyer,* —— U.S. at ——, 114 S.Ct. at 1001. As the Court stated, "the United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims." *Id.*

Cato again analogizes to the relationship between the United States and Indian Tribes. She points to *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), where the Court found that the United States had waived sovereign immunity by investing the Court of Claims with jurisdiction to hear contract disputes in the Tucker Act, 28 U.S.C. § 1505, and recognized a substantive right to compensation for damages sustained on account of the government's mismanagement of forest resources arising out of statutory mandates and the "elaborate control" over Indian lands that was vested in the United States. To the extent that she relies on *Mitchell* to support a waiver of sovereign immunity, she cannot succeed because the claims considered in *Mitchell* fell within the Tucker Act, while there is no suggestion that Cato's do. To the extent that she relies on *Mitchell* to support a right to a remedy, it is unhelpful because, as *Mitchell* itself makes clear, whether sovereign immunity is waived is a different question from whether a cause of action exists.

We accordingly conclude that the deficiencies in Cato's claim for damages cannot be cured.

## VI

■ Although sovereign immunity bars Cato's request for damages, the United States has waived its sovereign immunity in suits requesting non-monetary relief in the Administrative Procedures Act (APA), 5 U.S.C. § 702 (providing that in a case seeking "other than money damages" a suit shall not be dismissed "on the ground that it is against the United States"). She seeks an acknowledgment of discrimination and an apology from the United States. For reasons we have already explained, however,

Cato lacks standing to seek relief premised on the stigmatizing injury of discrimination in general. *Allen,* 468 U.S. at 754–756, 757, n. 22, 104 S.Ct. at 3326–3327, n. 22. As the district court indicated, the legislature, rather than the judiciary, is the appropriate forum for this relief. Accordingly, her requests for non-monetary relief were properly dismissed.

## VII

As the United States has not waived its sovereign immunity with respect to any of Cato's theories of relief that might fall within the Federal Tort Claims Act or any other source that we can identify, and under well-established principles Cato lacks standing to pursue claims in court arising out of the government's failure to do right as she sees it, we conclude that the district court did not abuse its discretion in dismissing both complaints with prejudice pursuant to § 1915(d).

AFFIRMED.