724 F.Supp. 792 (1989)
Keith PRESCOTT, Plaintiff,
v.
UNITED STATES of America, Defendant.
Jane M. CRAWFORD Plaintiff,
v.
UNITED STATES of America, Defendant.
Virginia ARP, et al., Plaintiffs,
v.
UNITED STATES of America, Defendant.
William R. ANDREWS, et al., Plaintiffs,
v.
UNITED STATES of America, Defendant.
Robert DICK, et al., Plaintiffs,
v.
UNITED STATES of America, Defendant.
Gloretta V. ANDERSON, et al., Plaintiffs,
v.
UNITED STATES of America, Defendant.
Ronald C. BAIN, et al., Plaintiffs,
v.
UNITED STATES of America, Defendant.
Marjorie E. LEASE, et al., Plaintiffs,
v.
UNITED STATES of America, Defendant.
Nathaniel BARLOW, Jr., et al., Plaintiffs,
v.
UNITED STATES of America, Defendant.
Peggy Irene HOWELL, et al., Plaintiffs,
v.
UNITED STATES of America, Defendant.
June RIDGEWAY, et al., Plaintiffs,
v.
UNITED STATES of America, Defendant.
Civ. Nos. S-80-143 RDF, S-78-271 RDF, S-80-380 RDF, S-81-96 RDF, S-81-208 RDF, S-81-594 RDF, S-82-180 RDF, S-82-231 RDF, S-82-651 RDF, S-83-539 RDF and S-83-711 RDF.
United States District Court, D. Nevada.
October 27, 1989.
Johns & Johns, Las Vegas, Nev., Dale Haralson, Haralson, Kinerk & Morey, Tucson, Ariz., and Evan J. Wallach, Lionel, Sawyer & Collins, Las Vegas, Nev., for plaintiffs.
Leon B. Taranto, Torts Branch, Civil Div., U.S. Dept. of Justice, Larry R. Rowe, Trial Atty., U.S. Dept. of Energy, Washington, D.C., and U.S. Atty. Wm. Maddox, and David Moynihan and Ruth Cohn, Asst. U.S. Attys., Las Vegas, Nev., for defendant.
Thorndal, Backus & Maupin, Las Vegas, Nev., for Reynolds Electrical & Engineering.
ORDER DENYING UNITED STATES' MOTION FOR SUMMARY JUDGMENT BASED UPON THE DISCRETIONARY FUNCTION EXCEPTION OF THE FEDERAL TORT CLAIMS ACT
ROGER D. FOLEY, District Judge.
According to the complaints in these consolidated cases, 220 persons were exposed to ionization radiation and sustained serious injuries as the result of exposure to radiation while employed at the Nevada Test Site. This employment of these 220 persons took place over thirty years within which some 500 nuclear weapons and other nuclear weapons tests, both above ground and underground, were conducted apparently between January 1951 and February 1981.
In the Government's "Memorandum in Support of the United States' Motion for Summary Judgment Based Upon the Discretionary Function Exception to the Federal Tort Claims Act", (page 3, n. 3), the Government correctly set forth the nature of our plaintiffs' tort claims in these consolidated cases as follows:
The specific allegations of negligence asserted by the plaintiffs and set forth in the prototypic complaint filed on March 5, 1985 in the Anderson case:
[T]he negligence aforementioned consisted of:
(a) Failure to recognize or appreciate the adverse health effects of radiation exposure.
(b) Failure to establish or supervise the establishment of addquate [sic] procedures to monitor and determine the amount of radiation in a given geographic area or the amount of radiation to which an individual had been exposed.

*794 (c) Failure to instruct and advise workmen at the Nevada Test Site as to the possible detrimental health effects of radiation exposure.
(d) Failure to provide protective clothing or other apparatus to eliminate, reduce, or minimize the radiation exposure and consequent adverse health effects.
(e) Conducting drilling and other test related operations in areas of known radiation contamination.
(f) Continuing to expose or to allow the exposure of workmen to radiation contamination well knowing or having reason to believe that said continued exposures were actually or potentially unsafe.
(g) Failing to take reasonable and necessary precautions in the conduct of the tests which in many instances resulted in unnecessary and undesigned radiation exposure.
(h) Failure to advise the individuals exposed to the extent of their exposure and possible detrimental health effects.
(i) Failure to properly train, supervise, and inform its employees, agents, contractors, and sub-contractors in matters concerning radiation containment and radiation health procedures.
(j) Failure to advise workers that because of their exposure to radiation they should have medical check-ups and follow-up medical observations in order to diagnose as early as possible any cancers which might develop.
Second Amended Complaint, ¶ 23; see also the following Complaints, as amended, which contain similar, if not identical, allegations: Andrews, ¶ 9; Arp, ¶ 9; Bain, ¶ 21; Barlow, ¶ 28; Bowden, ¶ 24; Crawford, ¶ 5; Dick, ¶ 8; Howell, ¶ 15; Lease, ¶ 9; Prescott, ¶ 14; and Ridgeway, ¶ 8.
The Government argued that under the decision in In re: Consolidated United States Atmospheric Testing Litigation (N.D.Cal), August 25, 1985, and September 19, 1985, 616 F.Supp. 759, plaintiffs' claims in these consolidated actions are barred by the discretionary function exception to the Federal Tort Claims Act.
On December 23, 1985 (Doc. # 168), the defendant moved for summary judgment against the plaintiffs' claims in these consolidated cases upon the grounds that the discretionary function exception to the Federal Torts Claim Act barred plaintiffs' claims relying upon the above Northern District of California decision.[1] This motion was argued and submitted to the court on April 10, 1989 (Doc. # 220).
On October 9, 1986 (Doc. # 198), this court entered a stay order pending:
(a) The Ninth Circuit's review of In re Consolidated Nuclear Injury Litigation, the decision of the Northern District of California in 1985, 616 F.Supp. 759;
(b) The Tenth Circuit's review of Allen v. United States, 588 F.Supp. 247 (D.Utah 1984).
On June 22, 1987, In re Consolidated United States Atmospheric Testing Litigation (Atmospheric Testing), 820 F.2d 982, the Ninth Circuit affirmed the Northern District of California decision.
On April 20, 1987, the Tenth Circuit reversed the Allen v. U.S. decision of the District of Utah, 816 F.2d 1417.
On February 29, 1988, the United States Supreme Court denied a petition for certiorari from Atmospheric Testing. Also, the Supreme Court denied a petition for certiorari from the Tenth Circuit decision in Allen v. U.S.
*795 Essentially, the Ninth Circuit in Atmospheric Testing and the Tenth Circuit in Allen v. U.S., are in agreement.
Both circuits believed that their decisions were compelled by Dalehite and Varig. (Dalehite v. United States (Dalehite), 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); United States v. Varig S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) (Varig), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).)
This court does not agree that Atmospheric Testing and Allen v. U.S., although believed by the Ninth and Tenth Circuits to be controlled by Dalehite and Varig, compel this court to hold that the discretionary function exception immunizes the United States from liability for its own alleged negligence to the 220 plaintiffs in these consolidated cases in nearly all of the particulars alleged as set forth above.
In June of 1988, the United States Supreme Court decided Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The Ninth Circuit, in Arizona Maintenance v. United States, decided on January 10, 1989, 864 F.2d 1497, elucidated and applied the principles of Berkovitz relative to the discretionary function exception to the Federal Tort Claims Act.
In Arizona Maintenance, Judge Schroeder, writing for a unanimous panel, first discussed the Federal Tort Claims Act, its Discretionary Function Exception, Dalehite and Varig:
The Court (Dalehite) held that the government's challenged conduct fell within the discretionary function exception. It interpreted the exception as covering conduct linked to the policy-making function of government, stating that "[w]here there is room for policy judgment and decision there is discretion. Id. [346 U.S.] at 36, 73 S.Ct. at 968. The Court's language, however, was expansive, and appeared to sweep within the exception conduct in that case ranging from a cabinet-level decision to store and export the fertilizer, to the lower-level decisions concerning fertilizer loading. The Court stated that "acts of subordinates in carrying out the operations of government in accordance with official directions [issued pursuant to a policy judgment] cannot be actionable." ...
More recently ... [i]n Varig, the Court stressed that policy-making was the touchstone for immunity and seemingly drew back on some of the expansive implications of Dalehite. The Court said that the underlying basis of the exception was Congress' wish to prevent "judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." ... Thus,
it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... [T]he basic inquiry concerning the application of the ... exception is whether the challenged acts of a Government employee  whatever his or her rank  are of the nature and quality that Congress intended to shield from tort liability.
In Varig:

The Court used language which some courts, including our own, may have misinterpreted as extending the discretionary function exception beyond policy choices to negligent failures to follow known safety standards....
This language has created confusion concerning what negligent conduct by federal officials will subject the United States to liability. If taken literally, as the government appears to take it, such language implies that policy decisions and all conduct carrying out policy decisions are protected by discretionary function immunity, even if government employees are negligent in the course of implementing a policy decision. As a result, the discretionary function exception at times has threatened to swallow the FICA's general waiver of immunity. For example, in Begay v. United States, 768 F.2d 1059 (9th Cir.1985), cert. denied, [485] U.S. [935], 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988), we said that Varig *796 abrogated distinctions between government acts at the planning level as opposed to the "operational" level and left all acts implementing a policy decision protected....
Judge Schroeder then turns to Berkovitz, illuminating this new case.
Last term, however, the Supreme Court clarified the scope of the discretionary function exception in Berkovitz v. United States, [486] U.S. [531], 108 S.Ct. 1964, 100 L.Ed.2d 531 (1988)....
The Supreme Court's unanimous opinion in Berkovitz emphasized that the discretionary function exception protects only government actions and decisions that are based on the permissible exercise of policy judgment.... It made clear that all decisions implementing a discretionary decision are not necessarily protected, but only those where choices are grounded in "social, economic, and political policy." ... It also made it clear that government employees are to adhere to objective standards of care, and that conduct which does not adhere to such standards is actionable under the FTCA even though it may be undertaken in implementing a policy decision.... To illustrate its points, Berkovitz discussed a Supreme Court opinion from a quarter century ago that had clearly distinguished between a protected discretionary decision and garden-variety negligence at the operational level ... See, Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). Indian Towing involved an accident allegedly caused by the Coast Guard's negligent failure to see that a lighthouse stayed in working order. The Court held in Indian Towing that while the initial decision to build and maintain the lighthouse was a discretionary judgment, the failure to maintain the lighthouse in good condition subjected the government to suit under the FTCA because the failure to maintain did not involve any permissible exercise of policy judgment....
The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a [lighthouse] and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order....
In Berkovitz, the Supreme Court expanded on the concept announced in Indian Towing. It separated the making of discretionary policy from its nondiscretionary implementation. The Court described a two-step process for determining whether the discretionary function exception applies in specific fact situations. First, a court must examine the nature of the challenged conduct and consider whether the government employee had any discretion to act, i.e., whether there was an element of choice.
Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion....
... If the employee has no choice as to appropriate conduct, there is no immunity.
If an action does involve some discretion, however, the inquiry does not end. The court must then determine whether exercise of that discretion is the kind that the discretionary function exception was designed to shield, that is whether it is one grounded in "social, economic, and political policy." Berkovitz, 108 S.Ct. at 1959.
. . . . .
. . . . .
Thus, under Berkovitz the key inquiry is not whether the government employee has a choice, but whether that choice is a policy judgment. Three recent Ninth Circuit cases, although decided before Berkovitz, now appear to illustrate the appropriate analysis after Berkovitz. Huber v. United States, 838 F.2d 398 (9th Cir.1988); ARA Leisure Services v. United States, 831 F.2d 193 (9th Cir. *797 1987); Seyler v. United States, 832 F.2d 120 (9th Cir.1987). In ARA Leisure Services, a tour bus went off the road in Denali National Park. The owner of the tour bus, after being sued by those on the tour bus for injuries, sued the United States for contribution, claiming that the road had not been maintained in a safe condition. ARA Leisure Services, 831 F.2d at 194. The district court granted summary judgment for the government, holding that the claim was barred by the discretionary function exception because maintenance was a matter of choice. The district court's analysis ended there.
We reversed, holding that where the "choice" is a failure or refusal to follow safety standards, there is no immunity. We said that "[w]here the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the exception falls away and the United States will be held responsible for the negligence of its employees." Id. at 195 (quoting Aslakson v. United States, 790 F.2d 688, 693 (8th Cir.1986)). We observed that the National Parks Service decision to design and construct the road was a policy decision. However, because the failure to maintain the road in a safe condition was not a decision grounded in social, economic or political policy, the plaintiffs' case based on that failure was not barred by the discretionary function exception. Id. at 196.
Similarly, in Seyler we held that failure to maintain a road in a safe condition was not a decision protected by the discretionary function exception. In that case, plaintiff was injured while riding on a motorcycle which failed to negotiate a turn on a road maintained by the Bureau of Indian Affairs. The plaintiff alleged that the BIA negligently failed to erect speed limit signs on the road. Seyler, 832 F.2d at 122. Reversing the district court's holding that the discretionary function exception barred the plaintiff's claim, we said:
[w]e can find nothing in the record to suggest that the BIA's failure to provide signs resulted from a decision "grounded in social, economic, or political policy." (Citation omitted). Moreover, we doubt that any decision not to provide adequate signs would be "of the nature and quality that Congress intended to shield from tort liability." (Citation omitted).

Id. at 123, (quoting Varig, 467 U.S. at 813-14, 104 S.Ct. at 2764).
In Huber we held that the discretionary function exception did not bar suit against the Coast Guard for alleged negligence in connection with its attempt to assist a ship in distress. We recognized that the Coast Guard, because of its limited resources, could not help all ships in distress, and had to make a policy judgment to use its resources to help plaintiff's ship. This decision was a protected discretionary decision. Huber, 838 F.2d at 401. However, its subsequent conduct in rendering assistance was not immune from scrutiny and had to comply with the applicable standard of care.
Once that choice had been made, thereby creating reliance by [the ship's] crew, the Coast Guard became liable for its failure, if any, to conform to the applicable standard of care.... The Coast Guard's failure to assist after specifically promising assistance was not an act of the nature and quality intended to be unreviewable under the discretionary function exception....
Id.
The appropriate analysis laid down by our own Ninth Circuit cases and consistent with Berkovitz can be summarized for purposes of this case as follows. Conduct of a government agency or employee is not immune from scrutiny as a "discretionary function" simply because it involves an element of choice. It must be a choice rooted in social, economic or political policy. If it is a choice to be exercised within established objective safety standards, and the plaintiffs claim negligence in failure to follow such standards, the discretionary function exception does not apply.
*798 In view of the principles of Berkovitz as explained and applied in Arizona Maintenance, this court believes that the correct rule of law to be applied in these consolidated cases is that although nuclear tests themselves and all decisions and planning made in the preparation and carrying out of the tests and in the evaluation of the test results are clearly within the discretionary function exception and thus immune from suit, the failure of federal officers and employees to observe objective standards of care for the protection of the health and safety of the human beings, the officers and employees of the United States and its test site contractors, is actionable negligence under the Federal Tort Claims Act.
Reference is here made to this court's ORDER ON REMAND, filed today, in Roberts v. United States and Nunamaker v. United States, 724 F.Supp. 778 (D.Nev. 1989), (the Baneberry case), holding that the failure of the Government to carry out its own mandated Health and Safety Standards [Chapter 0544 of the AEC Manual on Health and Safety, the Appendix thereto, and the Nevada Test Site Emergency Preparedness Planning (NTSO 0601)] promulgated to protect the health and safety of NTS employees, is actionable under the FTCA and not within the discretionary function exception.
The rule derived from Berkovitz and Arizona Maintenance is that in its nuclear weapons and other nuclear testing programs, the United States is immune from suit for creating hazards to human lives, but objective standards of care require it to act prudently to protect human life in every reasonable way. As in Baneberry, the Government must implement its own mandated health and safety program. Furthermore, notwithstanding Atmospheric Testing and Allen v. United States, the Government can be liable under the Federal Tort Claims Act in connection with the nuclear testing program for breach of objective duties to provide for the health and safety of NTS employees which can include a duty to warn, to train, to monitor, to decontaminate, and to give follow-up medical treatment where there is exposure to radiation.
Nowhere in the Federal Tort Claims Act does the Congress say that the Federal Tort Claims Act does not waive immunity to each and every aspect of nuclear testing. Contrarywise, the Act itself contemplates that nuclear testing will be carried out as safely as possible.
As to the claims of these 220 plaintiffs in these consolidated cases, the defendant's motion for summary judgment is denied and plaintiffs may proceed to trial upon the following allegations:
1. Failure to establish or supervise the establishment of adequate procedures to monitor and determine the amount of radiation in a given geographic area or the amount of radiation to which an individual had been exposed.
2. Failure to instruct and advise workmen at the Nevada Test Site as to the possible detrimental health effects of radiation exposure.
3. Failure to provide protective clothing or other apparatus to eliminate, reduce, or minimize the radiation exposure and consequent adverse health effects.
4. Continuing to expose or to allow the exposure of workmen to radiation contamination well knowing or having reason to believe that said continued exposures were actually or potentially unsafe.
5. Failing to take reasonable and necessary precautions in the conduct of the tests which in many instances resulted in unnecessary and undesigned radiation exposure.
6. Failure to advise the individuals exposed to the extent of their exposures and possible detrimental health effects.
7. Failure to properly train, supervise, and inform its employees, agents, contractors, and subcontractors in matters concerning radiation containment and radiation health procedures.
8. Failure to advise workers that because of their exposure to radiation they should have medical check-ups and follow-up medical observations in order to *799 diagnose as early as possible any cancers which might develop.
NOTES
[1] Defendant's Memorandum in Support of the Motion for Summary Judgment was filed December 30, 1985 (Doc. # 170); Plaintiffs' Response in Opposition and Statement of Facts were filed February 27, 1986 (Docs. # 180 and 181); Defendant's Reply Memorandum was filed March 13, 1986 (Doc. # 186); Plaintiffs' Supplemental Authorities were filed March 19, 1986 (Doc. # 189); Defendant's Supplemental Brief was filed May 21, 1986 (Doc. # 190); Plaintiffs' Supplemental Briefs were filed June 2, 1986 (Doc. # 191) and on June 30, 1986 (Doc. # 193); Further Supplemental Brief was filed by defendant on July 14, 1986 (Doc. # 194) plaintiffs' Further Brief was filed July 30, 1986 (Doc. # 195); defendant's Further Brief was filed August 5, 1986 (Doc. # 196); plaintiffs' Reply Brief was filed August 13, 1986 (Doc. # 197).