**Chris Ann MARTINEZ, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. D:87–3067–8.**

United States District Court, D. South Carolina, Beaufort Division.

July 3, 1990.

**400**

F. Mikell Harper, Beaufort, S.C., for plaintiff.

Heidi M. Solomon, Asst. U.S. Atty., Charleston, S.C., for defendant.

### ORDER

BLATT, Senior District Judge.

On May 14, 1986, plaintiff was struck by a white pick-up truck while jogging on the shoulder of Yorktown Boulevard, Marine Corps Depot, Parris Island, South Carolina. The truck was driven by Michael R. Fenn, Jr., a United States Marine. Fenn was arrested by military authorities and court martialed on August 5–6, 1988. At this court martial, Fenn pleaded guilty to two offenses: leaving the scene of the accident and aggravated assault. As there was no

plea bargain, Fenn was also tried and convicted by the court of assault with intent to commit murder.

Plaintiff brought this action against the United States, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) *et seq.*, requesting recovery for damages sustained as a result of Fenn's hitting her with his truck.[1] In her complaint, plaintiff characterizes Fenn's action as "negligent", and, additionally, asserts that the United States negligently failed to supervise Fenn. The United States asserts several defenses to plaintiff's complaint. It denies that Fenn was under any supervision at the time he struck plaintiff, and it further denies that Fenn was acting within the scope of his government employment at the time of the incident. Finally, the United States asserts that Fenn's conduct was done *intentionally* and, therefore, is barred by the "assault" exception to the FTCA, 28 U.S.C. § 2680(h).

Defendant United States had previously filed a motion to dismiss, or in the alternative for summary judgment, asserting that this suit was barred by the assault exception, that Fenn was not within the scope of his employment, and that this action was barred by collateral estoppel. This motion was denied by the court on December 28, 1988. *Martinez v. Fenn*, 702 F.Supp. 126 (D.S.C.1988). In denying defendant's motion to dismiss, the court focused on the "assault exception" defense. Finding that under federal common law assault does not necessarily include the element of intent, the court held that Fenn's plea in the military court did not rise to the level of an "assault" for purposes of 28 U.S.C. § 2680(h). At the time the court decided the motion to dismiss, however, the court had not been apprised by the parties, nor was this issue raised by the United States, of the fact that Fenn was also tried and convicted in the charge of "assault with *intent* to commit murder". *Transcript of Court Martial*, at 251.

---

1. In her complaint, plaintiff named both Fenn and the Government as defendants. However, Fenn was never served as a defendant, and plaintiff's counsel informed the court that the complaint against Fenn individually had been withdrawn.

■ The Government brought to the court's attention Fenn's conviction of assault with intent to commit murder in a motion for summary judgment filed March 13, 1989. At the trial of this matter, the court denied defendant's motion for summary judgment based on collateral estoppel or judicial estoppel grounds. The Government asserted that it was entitled to summary judgment on the ground of collateral estoppel because Fenn had been convicted of assault with *intent* to commit murder—thereby the issue of Fenn's intent had already been litigated. However, the plaintiff, although a witness in the court martial proceedings, was not a *party* to those proceedings. As noted by the plaintiff, the general rule in the Fourth Circuit and elsewhere is that judgments in criminal cases in these circumstances are not admissible in civil cases. *New York Life Ins. Co. v. Murdaugh,* 94 F.2d 104, 107–08 (4th Cir. 1938); *Chamberlain v. Pierson,* 87 F. 420, 424 (4th Cir.1898). Finding that Fenn's conviction did not operate as collateral estoppel here against plaintiff, the court denied summary judgment on that ground.

■ The Government also asserts that the doctrine of judicial estoppel should operate to preclude Ms. Martinez from bringing this action. Under that doctrine, a party may be precluded from adopting a position different from one taken in a prior proceeding. *See, Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir.1982). The Government contends that plaintiff's testimony at the Court Martial was instrumental in having Fenn convicted of intentional assault, and, therefore, completely inconsistent with her position in this court that his striking her was an unintentional act. While it is true that plaintiff did testify at the Court Martial, comparing her testimony at that proceeding with her testimony at the trial in this matter, this court finds that such testimony was not materially different. In her testimony at the court martial, plaintiff never actually stated that Fenn intentionally struck her; therefore, this court finds the doctrine of judicial estoppel inapplicable in this case.

■ Having determined that the Government was not entitled to summary judgment, the court proceeded to take evidence on the threshold factual issues before the court: whether Fenn was acting within the scope of employment when the incident occurred, and whether Fenn intentionally struck the plaintiff. Once the plaintiff has established a prima facie case of applicability of the FTCA, the burden shifts to the government to prove that an act is excepted by 28 U.S.C. § 2680. *Carlyle v. United States, Dept. of the Army,* 674 F.2d 554 (6th Cir.1982).

■ Technically, the issue of whether Fenn was acting "in the scope of his employment" must first be addressed. *See, Sheridan v. United States,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). In order for the Government to be held liable under the FTCA, the complained-of commission or omission must be caused by a government employee "while acting within the scope of his office or employment". 28 U.S.C. § 1346(b). In making this determination, the court looks to the principles of master-servant law of the jurisdiction in which the court sits. *Kennedy v. United States,* 585 F.Supp. 1119, 1122 (D.S.C.1984).

■ The testimony is undisputed that Fenn was traveling from one duty station to another at the time of the incident. Fenn had left his duty at the Mars Station and had been directed to proceed to further duty at the Depot Communications Center, located approximately two miles away. Defendant United States asserts that Fenn took a circuitous route to reach his second duty station, thereby traveling "outside the scope of his employment." [2] While Fenn admittedly did not take a direct route from his duty at the Mars Station to his duty at the Communications Center, he never left the military base. The court finds that the fact that Fenn stopped at a convenience store on the way to his second duty station

---

**2.** Fenn testified that he took a route to his second duty station that allowed him to go by a

convenience store. See *Transcript* at 167.

did not operate to take him out of the scope of his employment. In a similar case, *Sola v. Sunny Slope Farms*, 244 S.C. 6, 135 S.E.2d 321, 326 (1964), the South Carolina Supreme Court upheld the finding by the Workmen's Compensation Commission that a worker who was fatally injured while traveling between his job at a peach-picking shed and the company-provided labor camp was injured "within the scope of his employment" because of the "regularity of the work at the two places and the necessary travel between such". *Id.* The fact that Fenn was expected to report to both locations as part of his duty in the Marine Corps, and the fact that Fenn never left the military enclave, convince this court that Fenn's conduct meets the preliminary requisite of the FTCA that a government agent be "within the scope of his employment".[3]

■ Having determined that Fenn was acting in the course and scope of his employment, the court now turns to the Government's argument that Fenn's action was intentional and, consequently, barred by the "assault exception" to the FTCA, 28 U.S.C. § 2680(c). As previously noted, this court has decided that the finding by the Court Martial that Fenn acted intentionally is not dispositive of this civil action brought by Ms. Martinez; therefore, the court took evidence on the issue of whether Fenn's striking of Ms. Martinez was intentional. While there is conflicting evidence in the record concerning the issue of intent, the court is convinced that the Government has met its burden of proving that Fenn intentionally struck the plaintiff, thereby absolving the Government from any liability to plaintiff under 28 U.S.C. § 2680(c).

The Government called Gunnery Sergeant Jeffery Lovejoy, an expert in accident reconstruction, who had investigated the incident involving Fenn and Ms. Martinez. His testimony, replete with photographs of the incident scene, was that Fenn's truck entered the shoulder of the road on which plaintiff was jogging and drove in a straight line along that shoulder for 312 feet before striking plaintiff from behind. *Trial Record*, at 324. After striking plaintiff, Fenn kept his vehicle on the shoulder, according to Lovejoy, for another 65 feet before re-entering the highway. *Trial Record*, at 328.

Fenn testified at the trial that he must have fallen asleep at the wheel, lost control of the vehicle, and struck plaintiff. *Trial Record*, at 175. The evidence presented and the testimony of Gunnery Sergeant Lovejoy controverts that possibility. The investigation performed by Lovejoy indicates that Fenn had to travel parallel to a ditch for over 312 feet in order to strike plaintiff. Additionally, Lovejoy testified that he conducted an experiment with Fenn's truck, driving the same route that Fenn's truck took before striking plaintiff. After having the truck checked to determine that there were no front-end problems, he reconstructed Fenn's route and found that, with the road being as bumpy as it was, no one could drive on that path for 300 feet without veering into the ditch unless such driver deliberately held the steering wheel with both hands. *Trial Record*, at 334–335.

In addition to Lovejoy's report, in which the court places much credibility, the Government offered several witnesses to establish a motive for Fenn's conduct. Jay Hackbarth, who lived across the street from plaintiff on Parris Island, worked with Fenn in the summer of 1985. He testified that Fenn came to his house on several occasions and played with his dog, which plaintiff accidentally ran over with her car. Hackbarth testified that when he told Fenn the next day that his neighbor ran over the dog, Fenn became upset and questioned, "Well, how would they like it if someone hit them?" *Trial Record*, at 134. Hackbarth also testified that Fenn had observed that the plaintiff was the neighbor who struck the dog. *Trial Record*, at 131.

Thomas Clary, an inmate with Fenn at Parris Island on two separate occasions,

---

**3.** Of course, commission of an intentional tort can operate to take an actor outside the scope of his employment. That principle is codified in 28 U.S.C. § 2680(c)—(the "assault exception")— and is reviewed in this order, *infra*.

also testified on the issue of Fenn's intent. Clary testified that Fenn told him that a Staff Sergeant's wife, who often jogged around the "loop" on Parris Island, had run over a dog that he had given a friend. Clary also testified that Fenn told him that Ms. Martinez had reported him on an unrelated charge for which he served a sentence under a special Court Martial. According to Clary, Fenn stated that he intended to "get even" with her, *Trial Record*, at 52–56, and Fenn questioned him as to what penalties were imposed when someone ran over another person. Additionally, Clary swore that Fenn told him that he, Fenn, intended to hit plaintiff with his truck. *Trial Record*, at 56. Clary further testified that when Fenn returned to the "brig", while awaiting court martial for the incident involving Martinez, he asked Fenn if he had hit Ms. Martinez. In response, Fenn "didn't really say anything, and he gave [Clary] a slight nod...." *Trial Record*, at 225.

Fenn's conduct after hitting Ms. Martinez with his car is further evidence of his intention to strike her. Fenn left the scene of the accident without assisting plaintiff, went immediately to the Base Exchange in an attempt to replace his damaged headlight, and continued to the Base Exchange Annex to purchase silver spray paint. He then drove to the Communications Center and sprayed the dent in his truck with this paint. When questioned at the trial of this case as to the use of the spray paint, Fenn answered that he "panic[ked]" and was afraid of "someone finding out." *Trial Record*, at 158.

Further bolstering the conclusion of this court that Fenn intentionally struck plaintiff, Fenn made various admissions to that effect. First, he told government investigators that he may have hit a woman jogger. *Trial Record*, at 300. Second, after his Court Martial, he signed a statement saying, "I deeply regret the pain and suffering that my *impulsive act* has caused Mrs. Martinez and her family." *Government's Exhibit 36* (emphasis supplied). Finally, on February 2, 1989, he signed a statement concerning the events of May 14, 1986, which included this sentence: "As I

was driving down the road, on impulse, I was pissed off with the world, I saw the jogger, and just let my left elbow drop off the window sill so that my left hand left the steering wheel so that my truck hit the jogger, Mrs. Martinez." *Government's Exhibit 35*.

While plaintiff did present witnesses, most significantly Fenn himself, who testified that the striking of plaintiff was unintentional, this court finds, based on the entire record, and the credibility and demeanor of the witnesses, specifically the passages mentioned in this order, that the United States has met its burden of proving by the greater weight of the evidence that Fenn's striking of the plaintiff was an intentional act; consequently, 28 U.S.C. § 2680(h) operates to bar plaintiff from recovering from the Government as the complained-of injury arose "out of an assault...."

Plaintiff also brought a cause of action against the Government for negligent supervision of Fenn, resulting in injury to the plaintiff. This attempt to recast claims excepted from the Federal Tort Claims Act as "negligent supervision" has consistently been eschewed by the courts. *See United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985); *Doe v. United States*, 618 F.Supp. 71 (D.S.C.1984).

Concluding, the court finds that Fenn was acting within the course and scope of his employment at the time he hit plaintiff, but that Fenn intentionally struck plaintiff, and, thus, the court reluctantly must find that plaintiff is precluded by the "assault exception" of the FTCA from recovery from defendant, United States.

IT IS SO ORDERED.