Keith L. PRESCOTT, et al.,
Plaintiffs–Appellees,

v.

UNITED STATES of America,
Defendant–Appellant.

No. 90–16758.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1991.

Decided March 24, 1992.

As Amended Aug. 26, 1992.

Mark B. Stern, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Stewart L. Udall, Santa Fe, N.M., Dale Haralson, Haralson, Kinerk & Morey, Tucson, Ariz., Larry C. Johns, Johns & Johns, Las Vegas, Nev., for plaintiffs-appellees.

Before WILLIAM A. NORRIS and THOMPSON, Circuit Judges, and EZRA, District Judge.[*]

## OPINION

WILLIAM A. NORRIS, Circuit Judge:

This case arises from the government's alleged negligence in protecting workers at the Nevada Nuclear Testing Site. The government appeals the district court's motion denying summary judgment on the basis of the discretionary function exception to the Federal Tort Claims Act (FTCA). We affirm.

I

These consolidated actions under the FTCA seek damages for injuries allegedly sustained by 220 individuals in the course of the Government's nuclear weapons testing program in Nevada. All worked at the United States Nevada Test Site and claim to have suffered radiation injuries as a result of the government employees' alleged negligence in conducting nuclear tests at the site between 1951 and 1981. The plaintiffs claim that their alleged injuries were the result of the following tortious acts by the United States:

[*] Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

1. .Failure to establish or supervise the establishment of adequate procedures to monitor and determine the amount of radiation in a given geographic area or the amount of radiation to which an individual has been exposed.

2. Failure to instruct and advise workmen at the Nevada Test Site as to the possible detrimental health effects of radiation exposure.

3. Failure to provide protective clothing or other apparatus to eliminate, reduce, or minimize the radiation exposure and consequent adverse health effects.

4. Continuing to expose or to allow the exposure of workmen to radiation contamination well knowing or having reason to believe that said continued exposures were actually or potentially unsafe.

5. Failing to take reasonable and necessary precautions in the conduct of the tests which in many instances resulted in unnecessary and undesigned radiation exposure.

6. Failure to advise the individuals exposed to the extent of their exposures and possible detrimental health effects.

7. Failure to properly train, supervise, and inform its employees, agents, contractors, and subcontractors in matters concerning radiation containment and radiation health procedures.

8. Failure to advise workers that because of their exposure to radiation they should have medical check-ups and follow-up medical observations in order to diagnose as early as possible any cancers which might develop.

*Prescott v. United States*, 724 F.Supp. 792, 798–99 (D.Nev.1989).

The government moved for summary judgment, claiming that plaintiffs' actions were barred by the discretionary function exception to the FTCA. The FTCA authorizes suits against the United States for damages for personal injuries when a private person would be liable under the law of the place where the act or omission causing the injury occurred. *See* 28 U.S.C. §§ 1346(b), 2674. Such a suit is not available, however, when the act or omission complained of is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [g]overnment." 28 U.S.C. § 2680(a).

In support of its summary judgment motion, the government proffered no evidence that the alleged acts of negligence flowed from choices grounded in political, social or economic policy. Instead, the government relied on *In re Consolidated United States Atmospheric Testing Litigation*, 820 F.2d 982 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988) (*Atmospheric Testing*), for the proposition that everything the government does in carrying out the nuclear testing program falls within the discretionary function exception.

The district court denied the government's motion on the ground that *Atmospheric Testing* has been effectively overruled by *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The court then certified the alleged acts and omissions for trial. After its ruling, the district court granted the government's motion to certify the discretionary function issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and we granted the government's petition for interlocutory review.

## II

We need not reach the question whether *Atmospheric Testing* has been effectively overruled by *Berkovitz* because we disagree with the government's broad reading of *Atmospheric Testing* as providing blanket immunity to all actions related to the nuclear testing operations. Contrary to the government's view, *Atmospheric Testing* does not say that the discretionary function exception immunizes every act or omission of government employees in carrying out the nuclear testing program.

In *Atmospheric Testing*, civilian and military participants in the government's nuclear testing program sued the United States on two categories of claims. The first rested on alleged negligence in failing to take adequate safety precautions at the test site; the second was based on the government's alleged duty to warn participants of the dangers to which they had been or would be exposed. The district court granted summary judgment to the United States on the basis that the claims were barred by the discretionary function exception. We affirmed on the basis of *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

In *Dalehite*, the Supreme Court held that specific acts of negligence came within the purview of the discretionary function exception because they were "performed under the direction of a plan developed at a high level under a direct delegation of plan-making authority from the apex of the Executive Department." *Id.* at 40, 73 S.Ct. at 970. In *Atmospheric Testing*, we found *Dalehite* "squarely on point." 820 F.2d at 993. Crucial to our analysis was the fact that the alleged acts of negligence were the result of a balancing of competing policy considerations by on-site officials who had been entrusted with the power to engage in such discretionary decisionmaking. We said, "The responsibility for carrying out the Safety Plan was assigned to the officials in charge of the tests *who had discretion to adopt and modify the Plan as necessary to achieve the objectives of the test*." *Id.* at 995 (emphasis added). In rejecting the claims arising from decisions by military commanders, we particularly relied on the following facts:

The need to balance risks against test objectives was particularly acute in tests involving troop maneuvers.... It was recognized that the desire of the military to expose troops to realistic combat conditions could interfere with the AEC's weapons testing objectives. The arrangements ultimately incorporated in the Operations Plans represented an accommodation of these divergent requirements by the AEC and military officials. In later tests, involving large scale military maneuvers under battlefield conditions, *these considerations led to delegation of responsibility for radiological and physical safety of troops to the military commanders.*

*Id.* at 986 (emphasis added).

In further holding that the government's failure to issue warnings was also covered by the discretionary function exception, we also relied on the fact that the decision whether to issue warnings involved the weighing of competing policy consideration. Quoting *Dalehite*, we said, " 'Where there is policy judgment and decision there is discretion.' " *Id.* at 998 (quoting *Dalehite*, 346 U.S. at 36, 73 S.Ct. at 968). Thus, in *Atmospheric Testing*, the acts of alleged negligence came within the purview of the discretionary function exception because the district court found that the specific acts of alleged negligence flowed directly from the policy choices of on-site officials who had been explicitly entrusted with the responsibility of weighing competing policy considerations. *Atmospheric Testing*, 820 F.2d at 995.

As we read *Atmospheric Testing*, then, it did not, as the government contends, provide blanket immunity to all aspects of nuclear testing;[1] rather, it provided immu-

---

1. Just as we do not read *Atmospheric Testing* as providing blanket immunity to all aspects of nuclear testing, we decline the government's invitation to read the Tenth Circuit's opinion in *Allen v. United States*, 816 F.2d 1417 (10th Cir. 1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988), as providing such immunity. In *Allen*, the court held that the discretionary function exception immunized the failure of test-site personnel to go beyond what the operational plans specifically required them to do. *Id.* at 1421. Crucial to the court's holding, however, was the plaintiffs' admission that "the AEC delegated 'unfettered authority' to a Test Manager and his subordinates to implement public safety programs." *Id.* As a result of plaintiffs' concession, there was no issue of material fact on this point. Although we express no views on the soundness of *Allen* 's reasoning and holding, we note that it is readily distin-

nity solely to those acts resulting from policy choices that were expressly delegated to test site officials. *See id.; see also Roberts v. United States,* 887 F.2d 899, 901 (9th Cir.1989). In *Roberts,* a suit brought by the widows of two men who died from leukemia four years after contamination by radioactive fallout produced by the venting of an underground nuclear test, we considered whether *Atmospheric Testing* immunized the government against plaintiffs' claim of negligence. *Id.* at 900. If *Atmospheric Testing* had provided blanket immunity to all activities associated with nuclear testing, there is no question that in *Roberts* we would have affirmed the district court's order denying relief on the ground that we lacked subject matter jurisdiction. Instead, we remanded. Implicit in our observation that "the record is not sufficiently developed for [us] to determine whether Roberts' challenge is different in any meaningful way from that in *Atmospheric Testing*" is the idea that *Atmospheric Testing* neither provides blanket immunity nor precludes a particularized fact-specific inquiry. *Id.* at 901. Indeed, in *Roberts,* we went on to note that "[t]he crucial distinction between this case and *Atmospheric Testing* appears to be that Roberts does not challenge the safety procedures authorized by the AEC but rather the failure to develop the mandated procedures." *Id.* Reasoning that "[w]e are unable to determine from the documents in the record whether *the Test Manager had the degree of discretion in deciding whether to develop these plans that the Atmospheric Testing court found in that case,*" *id.* at 901–02 (emphasis added), we remanded to the district court for further proceedings. We thus declined to immunize governmental conduct unless the government proved that the exercise of a discretion to make policy choices had been explicitly delegated to the test site officials and that the officials' allegedly negligent

actions flowed from choices based on social, economic and political policy considerations.

Were we to adopt the government's expansive reading of *Atmospheric Testing,* we would find ourselves in conflict with the discretionary function exception caselaw of both the Supreme Court and the Ninth Circuit. *See, e.g., Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018 (9th Cir.1989); *Arizona Maintenance Co. v. United States,* 864 F.2d 1497 (9th Cir.1989). As we explained in *Arizona Maintenance,* "The Supreme Court's unanimous opinion in *Berkovitz,* ... made clear that all decisions implementing a discretionary decision are not necessarily protected, but only those where choices are grounded in 'social, economic, and political policy.'" 864 F.2d at 1501 (quoting *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959). We further noted, "[U]nder *Berkovitz* the key inquiry is not whether the government employee has a choice, but whether that choice is a policy judgment." *Id.* at 1503. *Arizona Maintenance* requires a particularized and fact-specific inquiry to determine whether the acts or omissions in question flowed from a choice based on social, economic and political policy. The government attempts to avoid this particularized and fact-specific inquiry, which we articulated in *Arizona Maintenance* and followed, *inter alia,* in *Roberts,* through a blanket reliance on *Atmospheric Testing.* This attempt must necessarily fail.

### B

■ Having determined that the United States was not entitled to summary judgment on the basis of *Atmospheric Testing,* we now consider whether the record gives rise to an alternative ground for awarding the government summary judgment. This

---

guishable from this case because the government has not proven here that on-site officials were delegated the sort of unfettered discretion which the court in *Allen,* based on plaintiffs'

concession, found that the Test Manager enjoyed. Unlike in *Allen,* there are genuine issues of material fact here.

question turns on the allocation of the burden of proving (or disproving) the applicability of the discretionary function exception. If the plaintiffs bear the burden of disproving the applicability of the discretionary function exception, then the government would be entitled to summary judgment if plaintiffs fail to come forth with sufficient evidence to establish that there are genuine issues of material fact on the discretionary function issue. However, if the government bears the burden of proving the applicability of the exception, then the government would be entitled to summary judgment if it has adduced sufficient evidence to establish that no genuine issues of material fact remain for trial with respect to the discretionary function exception.

As an initial matter, then, we must decide whether the plaintiff or the government has the burden of proving whether a certain act or omission comes within the purview of the discretionary function exception. This appears to be an issue of first impression in our circuit. Although the answer has been implicit in many of our cases, we have never explicitly addressed the question.

■ We first note that plaintiff bears the burden of persuading the court that it has subject matter jurisdiction under the FTCA's general waiver of immunity. *See* 28 U.S.C. § 1346(b). This follows from the general principle that "[t]he party who sues the United States bears the burden of pointing to ... an unequivocal waiver of immunity." *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983) (citation omitted),

*cert. denied*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984). We applied this general principle in the context of the FTCA's general waiver of immunity in *Baker v. United States*, 817 F.2d 560, 562 (9th Cir.1987), *cert. denied*, 487 U.S. 1204, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988), and subsequently in *West v. Federal Aviation Administration*, 830 F.2d 1044, 1046 (9th Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988). Neither *Baker* nor *West*, however, considered the allocation of the burden for proving the *exceptions* to the general waiver of immunity.

Only two circuits have decided this question. *See Carlyle v. United States*, 674 F.2d 554 (6th Cir.1982); *Stewart v. United States*, 199 F.2d 517, 520 (7th Cir.1952). Both circuits agreed that the burden of *proving* the exception lies with the government.[2] The Sixth Circuit laid out the following framework:

> [A] plaintiff can invoke jurisdiction only if the complaint is facially outside the exceptions of § 2680. This does not mean, [however,] that the plaintiff must disprove every exception under § 2680 to establish jurisdiction pursuant to the FTCA. What it does mean is that a plaintiff may not invoke federal jurisdiction by pleading matters that clearly fall within the exceptions of § 2680. Only after a plaintiff has successfully invoked jurisdiction by a pleading that facially alleges matters not excepted by § 2680 does the burden fall on the government to prove the applicability of a specific provision of § 2680.

*Carlyle*, 674 F.2d at 556.[3]

---

**2.** The only other circuit to have discussed the same issue is the First Circuit. *See Hydrogen Technology Corp. v. United States*, 831 F.2d 1155, 1162 n. 6 (1st Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988). The First Circuit has expressed no view, however, on the burden of *proof* question. It is, of course, "well-established law that ... jurisdictional defenses cannot be waived by the parties and may be raised for the first time on appeal or even raised by a court sua sponte." *Id.; accord Roberts v. United States*, 887 F.2d 899, 900 (9th Cir.1989).

**3.** Two district courts have applied the Sixth Circuit's rule in *Carlyle* that the government bears the burden to prove the applicability of an exception to the FTCA in order to defeat jurisdiction. *See Martinez v. United States*, 740 F.Supp. 399, 401 (D.S.C.1990) ("Once the plaintiff has established a prima facie case of applicability of the FTCA, the burden shifts to the government to prove that an act is excepted by 28 U.S.C. § 2680."); *Bergman v. United States*, 565

The Sixth Circuit rule—that the government bears the ultimate burden of proving the applicability of an exception to the FTCA—is consistent with the results our circuit has reached in FTCA cases. We have declined to affirm a dismissal of an action on the basis of a discretionary function issue when the evidentiary record was insufficient to entitle the government to summary judgment on the question whether the alleged acts of negligence resulted from choices grounded in social, economic or political policy. In *Seyler v. United States*, 832 F.2d 120 (9th Cir.1987), for instance, we reversed a summary judgment in favor of the United States because "the record [was] clearly insufficient for entry of summary judgment on the discretionary function issue.". *Id.* at 123. Similarly, in *ARA Leisure Services v. United States*, 831 F.2d 193 (9th Cir.1987), we declined to hold that the Park Service's "failure to maintain [a pass] in a safe condition was a decision grounded in social, economic or political policies [because of insufficient evidence of a] clear link between Park Service road policies and the condition of [the pass]." *Id.* at 195. The holding in these cases is consistent with the view that the United States is not entitled to summary judgment until it has established that the actionable conduct was the result of a choice grounded in social, economic or political policy.

Because an exception to the FTCA's general waiver of immunity, although jurisdictional on its face, is analogous to an affirmative defense, we believe the Sixth and Seventh Circuits correctly placed the burden on the United States as the party which benefits from the defense. Today, we follow these two circuits and adopt the rule as set forth by the Sixth Circuit in *Carlyle*. We thus hold explicitly that the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity. As the Seventh Circuit reasoned in *Stewart*, placing the burden on the plaintiff would "impose upon the plaintiff the burden of proving [thirteen] negative averments. Such a result would border on the preposterous." *Stewart*, 199 F.2d at 520.[4]

■ Having determined that the United States bears the ultimate burden of proving the applicability of the discretionary function exception, we reach the question whether the evidentiary record before us establishes the non-existence of a genuine issue of material fact with respect to the discretionary function question. It is undisputed that "nuclear tests themselves and all decisions and planning made in the preparation and carrying out of the tests and in the evaluation of the test results are clearly within the discretionary function exception and thus immune from suit." *Prescott*, 724 F.Supp. at 798. More specifically, the question is whether the alleged acts of negligence the district court certified for trial come within the purview of the discretionary function exception.

We have previously mentioned the particularized and fact-specific inquiry applicable

F.Supp. 1353, 1404–05 (W.D.Mich.1983). Two district courts have placed the burden on the plaintiff. *Waymire v. United States*, 629 F.Supp. 1396, 1397 (D.Kan.1986); *Porter v. United States*, 619 F.Supp. 137, 142 (S.D.Ohio 1985). Curiously, *Porter* is a district court case from the Sixth Circuit that was decided after *Carlyle*.

4. In its petition for rehearing, the government argues that our holding that the United States bears the ultimate burden of proof is inconsistent with *United States v. Gaubert*, —— U.S. ——, ——, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991). We disagree. In *Gaubert*, the Court indicated that a plaintiff must advance a claim that is facially outside the discretionary func-

tion exception in order to survive a motion to dismiss. The framework that the Seventh Circuit articulated in *Carlyle* and that we adopt here is consistent with the Court's analysis. *See Carlyle*, 674 F.2d at 556 ("Only after a plaintiff has successfully invoked jurisdiction by a pleading that facially alleges matters not excepted by § 2680 does the burden fall on the government to prove the applicability of a specific provision of § 2680."). *Gaubert*, of course, did not deal with the burden of proof question.

The government also argues that the plaintiffs' claims should not survive dismissal on their face. As we explained above, this argument is foreclosed by *Roberts*, 887 F.2d at 901.

to FTCA cases raising the discretionary function exception issue. *See supra* page 699. "In accordance with the Supreme Court's decision in *Berkovitz*, this court utilizes a two-step test to determine whether the FTCA discretionary function exception applies in a given case." *Summers v. United States*, 905 F.2d 1212, 1214 (9th Cir.1990) (citation omitted). First, the court considers "whether the challenged action is a matter of choice for the acting employees: '[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow' " and the employee fails to follow that course of action. *Id.* at 1214 (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958). Second, "[i]f the challenged conduct does involve an element of judgment, the second step is to determine whether that judgment 'is of a kind that the discretionary function was designed to shield' " *Id.* (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1959). "To be shielded the judgment must be grounded in social, economic, or political policy." *Id.* Under prong two of the *Summers* inquiry, for the discretionary function exception to apply, the United States must prove that each and every one of the alleged acts of negligence (1) involved an element of judgment and (2) the judgment was grounded in social, economic, or political policy.

In its motion to the district court, the government did not come forth with evidence to prove that the alleged acts of negligence by test site officials "involve[d] an element of judgment." *Id.* Nor did the government put forth evidence that the judgment (if any) was grounded in social, economic, or political policy. Instead, having shown that these actions were carried out in the course of the nuclear testing operations, the government relied exclusively on *Atmospheric Testing*, which it read as providing a blanket immunity to all government operations related to nuclear testing. Implicit in the government's summary reliance on *Atmospheric Testing* is the view, in the context of nuclear testing, that the government need not prove that particular acts and omissions resulted from choices grounded in social, economic and political policy because *Atmospheric Testing* has brought all such acts and omissions within the purview of the exception. In essence, then, the government interprets *Atmospheric Testing* as holding that a complaint based on a government employee's negligence in carrying out a nuclear test necessarily constitutes a pleading outside the FTCA's waiver of general immunity. We have already rejected this expansive reading of *Atmospheric Testing*.

### III

█ In sum, we affirm the district court's order denying summary judgment because the government failed to adduce any evidence that the specific acts of negligence flowed directly from the policy choices of on-site officials who had been explicitly entrusted with the responsibility of weighing competing policy considerations.[5] There remains a genuine issue of material fact whether "the [applicable government officials] had the degree of discretion ... that the *Atmospheric Testing* court found in that case." *See Roberts*, 887 F.2d at 901–02. At this stage of the case, the government has not established that choices exercised by government officials involved policy judgments.[6]

---

5. The government, of course, need not necessarily prove that a government employee actually balanced economic, social, and political concerns in reaching his or her decision. *Kennewick*, 880 F.2d at 1028. Nevertheless, the government must, at a minimum, prove that the challenged decision was susceptible to such balancing or that the government employee was entrusted with the responsibility of conducting such balancing. *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958; *Arizona Maintenance*, 864 F.2d at 1501; *Roberts*, 887 F.2d at 901–02.

6. We express no opinion with respect to the first prong of the *Summers* inquiry, i.e., whether the government's actions in this case are not shielded by the discretionary function exception because the government officials acted in contravention of a federal statute, regulation, or policy. The district court's opinion suggests that this case shares certain similarities with another FTCA case arising from nuclear testing and cur-

In light of the foregoing, we affirm the district court's order denying the government's motion for summary judgment on the ground that there are triable issues of fact as to whether the acts certified for trial flowed from choices grounded in social, economic or political policy.

The order of the district court denying the government's motion for summary judgment is AFFIRMED.

rently pending in a Nevada district court. *See Prescott,* 724 F.Supp. at 798 (citing *Roberts v. United States,* 724 F.Supp. 778 (D.Nev.1989)). In *Roberts,* on remand from our decision discussed above, *Roberts,* 887 F.2d 899, the district court found that the government violated Atomic Energy Commission regulations in carrying out certain aspects of the nuclear tests which resulted in the alleged injuries. *Roberts,* 724 F.Supp. at 785–87. As a result, the court held that it had subject matter jurisdiction over the suit under the first part of the *Summers* inquiry. Plaintiffs in this case argue that the government acted in contravention of its own regulations just as it did in *Roberts* and that therefore there is no difference between *Roberts* and this case.

The government strongly disputes this contention. If, as plaintiffs contend, the government officials did indeed violate their own regulations, denial of summary judgment would have been proper under prong one of the *Summers* inquiry. Although the district court's reference to the regulations cited in *Roberts* suggests that the court thought certain AEC regulations were applicable here and the government violated them, *see Prescott,* 724 F.Supp. at 798, the record is less than clear on this issue. Because we affirm the order denying the motion for summary judgment under prong two of the *Summers* inquiry, however, we decline to address this ambiguity in the record with respect to prong one of the same inquiry.