Connie Ellen **GUIMOND, Personal Rep-
resentative of the ESTATE OF John
Joseph GUIMOND, Plaintiff—Appel-
lant,**

v.

**UNITED STATES of America,
Defendant—Appellee.**

No. 01–35069.

D.C. No. CV–00–00158–JWS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 2002.

Decided Oct. 4, 2002.

Before HILL,* GOULD and BERZON,
Circuit Judges.

## MEMORANDUM**

Connie Ellen Guimond sued the United States under the Federal Torts Claim Act (FTCA), alleging that the Federal Aviation Administration (FAA) was negligent and caused wrongful death by failing to conduct a proper study of a radio antenna near Nome, Alaska. Guimond's son died when the airplane he was piloting crashed into the antenna. Guimond asserted that if the FAA had conducted a proper study, the agency would have found that the antenna must be removed because it posed a hazard to air navigation. The district court granted summary judgment for the United States, holding that there was no subject matter jurisdiction because the discretionary function exception of the FTCA applied and there was no waiver of sovereign immunity. We review de novo the district court's determination of lack of subject matter jurisdiction under the discretionary function exception. *Arizona Maint. Co. v. United States*, 864 F.2d 1497, 1499 (9th Cir.1989) (citing *Mitchell v. United States*, 787 F.2d 466, 468 (9th Cir.

---

* The Honorable James C. Hill, Senior United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1986)). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

The FTCA authorizes suits against the United States for damages for personal injuries when a private person would be liable under the law of the place where the act or omission causing the injury occurred. *See* 28 U.S.C. §§ 1346(b), 2674. Such a suit is not available, however, when the act or omission complained of is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government." 28 U.S.C. § 2680(a).

As required by *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), we use a two-step test to determine whether the discretionary function exception applies. *Prescott v. United States,* 973 F.2d 696, 703 (9th Cir.1992). First, we consider "whether the challenged action is a matter of choice for the acting employees: The discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow and the employee fails to follow that course of action." *Id.* (internal quotations omitted). Second, if the challenged conduct does involve an element of judgment, we must determine whether that judgment "is of a kind that the discretionary function was designed to shield." *Id.* We have held that the exception was designed to shield discretionary functions that are "grounded in social, economic, and political policy." *Arizona Maint. Co.,* 864 F.2d at 1502 (internal quotations and citation omitted). To satisfy the second step of the *Berkovitz* test, the government does not need to prove that social, economic, and political policy factors were actually involved in the exercise of discretion, but only that the function is "susceptible to policy analysis."

*United States v. Gaubert,* 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324.

Here, the FAA's decision not to require the removal of the KICY tower falls squarely within the discretionary function exception. FAA Order 7400 ("the Order") includes the policies governing the agency's treatment of obstructions to air navigation. Describing the procedures that the FAA uses to evaluate such obstructions, the Order recites that the agency must make policy judgments and that it retains discretion over how to conduct evaluations. In the paragraph entitled "POLICY," which describes the agency's "prime objective ... in conducting aeronautical studies of the ... effects of objects," the Order states that

> [i]n the case of proposed construction or alteration, first consideration should be given to altering the proposal. For existing objects, first consideration should be given to the adjustment of aviation requirements that would accommodate the structure. This does not preclude issuing a determination of hazard to air navigation ... when [such] adjustment ... could not be done without substantial adverse effect on aeronautical operations.

FAA Order 7400.2d, ¶ 4–5. This paragraph articulates an "established government policy" under *Gaubert,* and its language is clearly discretionary.

The Order also shows that discretion is required to determine whether an adjustment would cause a "substantial adverse effect." To answer that question,

the type of activity must be considered .... For example, if one or more aeronautical operations per day would be affected, this would indicate regular and continuing activity, thus a significant volume no matter what the type of operation. On the other hand, an affected instrument procedure or minimum altitude may need to be used only an average of once a week to be considered significant if the procedure is one which serves as the primary procedure under certain conditions.

*Id.* at ¶ 7–5. While this paragraph leaves the agency with no discretion about whether to consider the type of activity, and in some cases no discretion whether there is a significant volume of activity, nonetheless there is ultimately discretion in determining what constitutes a substantial adverse effect. Again, the Order makes clear that the agency retains discretion when evaluating an object's effect on visual flight rules (VFR) operations: "The intent of these guidelines is to provide a basis for analytical judgments in evaluating and determining the effect of proposed or existing surface structures on VFR operations." *Id.* at ¶ 7–20.

The Order does include some mandatory language involving evaluations of obstructions to airspace. For example, the Order states that "[t]he obstruction evaluation shall be administered by air traffic personnel." Id. at ¶ 4–1. The Order also states that a structure "which would exceed a height of 2,000 feet will be presumed to have a substantial adverse effect upon the safe and efficient use of navigable airspace." *Id.* at ¶ 4–11. However, the provisions applicable to the FAA's decision to permit the KICY antenna to remain in place are discretionary.[1]

Because the Order demonstrates that the decision that the antenna was not a hazard involved matters of discretionary choice for the agency officials who were charged with studying the tower, the Order satisfies the first step of the test set forth in *Berkovitz* to determine a discretionary function. The Order also satisfies the second step because the decisions made by FAA employees in implementing the review procedures were grounded in social, economic and political goals. Under *Gaubert*, we presume that an agency exercising discretion does so in furtherance of public policy. *See Gaubert,* 499 U.S. at 324. There is no reason to suspect any other reason for the FAA's discretionary choices besides the balancing of the needs of business, air traffic safety, and the resources it had available for reviewing the antennas. Such agency decisions have been found to meet the second prong of the *Berkovitz* test. *See, e.g., Childers v. United States,* 40 F.3d 973 (9th Cir.1994) (holding that decision of park service as to which trails to maintain during winter months was a public policy consideration which met the requirements of *Berkovitz* ). Therefore, the discretionary function exception applies, and Guimond's suit is barred under the FTCA.

**AFFIRMED**

---

1. Guimond notes that specific standards governing the visibility of antennae are set out in Advisory Circular AC–70/7460–1J, and she argues that the FAA had no choice but to comply with those standards. However, the contents of advisory circulars are mandatory only if the circular is listed in 14 C.F.R. § 151.72 & app. I. AC–70/7460–1J has not been listed there, and consequently its contents are only recommendations.